RONALD HAGAN ET AL., APPELLANTS, V. UPPER REPUBLICAN
NATURAL RESOURCES DISTRICT, A POLITICAL SUBDIVISION OF THE
STATE OF NEBRASKA, ET AL., APPELLEES.

610 N.W.2d 751

Filed May 23, 2000.   No. A-99-374.

Amy Svoboda, of Gregory J. Beal & Associates, P.C., for appellants.

G. Peter Burger, of Burger & Bennett, P.C., for appellees.

HANNON, INBODY, and CARLSON, Judges.

CARLSON, Judge.

## INTRODUCTION

Ronald Hagan, Troy Brandt, and Todd Hatcher, hereinafter referred to collectively as "the plaintiffs," appeal from an order of the district court for Chase County, Nebraska, sustaining a demurrer to the plaintiffs' amended petition for declaratory judgment filed against the following: Upper Republican Natural Resources District (NRD); Champion Valley Enterprises, L.L.C. (Champion), a Nebraska limited liability company; and Steven Leibbrandt and Tim Leibbrandt, individually. For the reasons set forth below, we reverse, and remand with direction.

## BACKGROUND

On January 26, 1999, the plaintiffs filed an amended petition for declaratory judgment. In their petition, the plaintiffs alleged that each of them resides within the boundaries of NRD and that each of them is an irrigator and a landowner within that same district. The plaintiffs also alleged that at all relevant times, NRD had adopted or implemented a " 'moratorium,' " prohibiting or limiting new wells which would draw upon ground water resources in significant quantities within the geographical boundaries of the moratorium area. The plaintiffs stated that Champion and the Leibbrandts are all similarly situated within this moratorium area.

The plaintiffs also alleged that they are in the area subject to the water use moratorium, as distinguished from all other irrigators or members of the public, generally, and that other irrigators or members of the public outside NRD are not subject to the moratorium.

The plaintiffs stated that prior to July 7, 1998, both Champion and the Leibbrandts, hereinafter referred to as the "applicants,"

applied to NRD for water sufficient to operate hog confinement facilities on properties owned by them. The record shows that subsequently, NRD denied the applicants' requests for variances. The plaintiffs allege that on or about July 7, 1998, NRD entered into separate settlement agreements with each of the applicants, the effect of which was to grant each applicant a variance, allowing them usage of ground water which was originally the subject matter of their application for a variance.

The plaintiffs further alleged that each of them individually applied during the summer of 1998 to NRD for an allocation of ground water for irrigation purposes and that NRD denied each of their requests. The plaintiffs stated that as a result of NRD's denial of their requests for variances, they cannot develop their agricultural land through the use of irrigation or use additional quantities of water should they desire to increase the number of acres of land they irrigate. The plaintiffs alleged that this severely limits the amount of income that can be produced by their land and discriminates against them.

The plaintiffs alleged that each of them has a direct interest and property right in the ground water of the aquifer beneath lands owned by them. The plaintiffs also alleged that each of them suffered injury, personally, as well as collectively, by NRD's denial of a variance to each of them to use water from the aquifer, while giving preferential treatment to the applicants.

In addition, the plaintiffs alleged that the applicants draw water from the same aquifer as the aquifer that underlies their land and that therefore, the plaintiffs are injured in that the water table of the aquifer will decline further by virtue of the withdrawal of the water by the applicants.

In their amended petition, the plaintiffs sought an order declaring the settlement agreements entered into between NRD and each applicant to be unlawful and unconstitutional under the "law of the State of Nebraska, the Constitution of the United States and Amendments thereto, the Constitution of the State of Nebraska and Amendments thereto," by reason of the following factors:

> a. That [NRD] is without statutory or lawful authority to enter into such an agreement;

b. That [NRD] did not lawfully enter into such agreement by reason of the fact that they have a variance committee which is supposed to approve variances, and this agreement was not approved by such committee and has the actual and net legal effect of granting a variance;

c. That the agreements not only give the [applicants] preferential treatment, but go even further so as to exempt them from having to comply with regulations, and purports to exempt them from lawful, rules and regulations promulgated or which may be promulgated by [NRD] in the future . . . .

. d. That said agreements violate the express statutory mandate and provisions of law creating and governing natural resource districts . . . .

e. That said agreements violate the provisions of the Republican River Compact because it allows illegal use of groundwater that depletes surface flows, which are allocated through the Compact. . . .

f. That said agreements were entered into contrary to the express provisions of the said NRD's own rules and regulations . . . .

g. That the agreements deny the Plaintiffs in this action equal protection of the law . . . .

h. That said agreements are unlawful and unconstitutional because they deny plaintiffs due process of law . . . .

The plaintiffs prayed for a declaratory judgment declaring such settlement agreements null and void in their entirety and for any fees and costs.

On January 27, 1999, NRD filed a motion to strike and make more definite and certain. On the same date, each applicant filed a demurrer to the plaintiffs' amended petition.

In an order filed March 9, 1999, the trial court sustained the applicants' demurrers to the plaintiffs' amended petition and dismissed the plaintiffs' amended petition. The trial court stated:

[T]he Plaintiffs in the Amended Petition do not claim any benefit they might receive by the Court ruling in their favor. They do not claim any particular right, status, or other legal or equitable interest that they might have which is separate or distinct from the general public which would be served if the court ruled in their favor.

. . . The Plaintiffs attempt to claim special status or injury as irrigators and neighbors, but, that status is not different than all the members of the general public residing within the jurisdiction of the natural resource district. Even the prayer of the Plaintiffs' petition does not request any relief that would benefit the Plaintiffs if the Court ruled in their favor. In short, the Plaintiffs have no standing to bring this action.

The trial court stated that there was no possibility that the plaintiffs could further amend their petition to allege facts which would show standing to bring this action. The trial court also stated that NRD's motion to make more definite and certain and to strike had been rendered moot by its ruling on the applicants' demurrers.

## ASSIGNMENTS OF ERROR

On appeal, the plaintiffs argue that the trial court erred in (1) finding that they did not allege sufficient facts in their amended petition to show that they have standing and (2) considering whether the amended petition requested any relief that would benefit them if the court ruled in their favor. Because we find that the trial court erred in holding that the plaintiffs lack standing to bring their declaratory action, we do not address the plaintiffs' second assignment of error.

## STANDARD OF REVIEW

Standing is a jurisdictional component of a party's case because only a party who has standing may invoke the jurisdiction of a court; determination of a jurisdictional issue which does not involve a factual dispute is a matter of law which requires an appellate court to reach an independent conclusion. *Rozmus v. Rozmus*, 257 Neb. 142, 595 N.W.2d 893 (1999). In reviewing a ruling on a general demurrer, an appellate court cannot assume the existence of a fact not alleged, make factual findings to aid the pleading, or consider evidence that might be adduced at trial. *Sweeney v. City of Gering*, 8 Neb. App. 675, 601 N.W.2d 238 (1999). When reviewing an order sustaining a demurrer, an appellate court accepts the truth of the facts which are well pled, together with the proper and reasonable inferences

of law and fact which may be drawn therefrom, but does not accept as true the conclusions of the pleader. *Id.*

## ANALYSIS

■ Because the requirement of standing is fundamental to a court's exercising jurisdiction, a litigant or court before which a case is pending can raise the question of standing at any time during the proceeding. *Ritchhart v. Daub*, 256 Neb. 801, 594 N.W.2d 288 (1999). In order to have standing to invoke a tribunal's jurisdiction, one must have some legal or equitable right, title, or interest in the subject of the controversy. *Id.* Standing relates to a court's power, that is, jurisdiction, to address the issues presented and serves to identify those disputes which are appropriately resolved through the judicial process. *Id.* As an aspect of jurisdiction and justiciability, standing requires that a litigant have such a personal stake in the outcome of a controversy as to warrant invocation of a court's jurisdiction and justify the exercise of the court's remedial powers on the litigant's behalf. *Id.* Under the doctrine of standing, a court may decline to determine the merits of a legal claim because the party advancing it is not properly situated to be entitled to its judicial determination. *Id.*

On appeal, the plaintiffs argue that the district court erred in sustaining the demurrers filed by each of the applicants. Specifically, the plaintiffs contend that they have standing to bring the instant action. NRD and the applicants contend that the district court did not err in sustaining the applicants' demurrers and dismissing the plaintiffs' amended petition. Citing *Ritchhart, supra*, NRD and the applicants argue that the trial court did not err in concluding that the plaintiffs lack standing because they do not have a legal or equitable interest separate or distinct from the general public.

In *Ritchhart, supra*, Kimberly Ritchhart brought an action against the city of Omaha's mayor, fire chief, and communications chief, alleging that the agreement of the fire chief and the communications chief to waive their right to appeal to the personnel board, upon discharge, violated her right to have the city's public safety functions performed without political influence or control. The district court overruled the defendants'

demurrer, in which the defendants alleged that Ritchhart lacked standing, and permanently enjoined the mayor from enforcing the waiver. The defendants appealed. The Nebraska Supreme Court reversed, holding that Ritchhart had no interest in the outcome of the litigation which was not shared equally by all residents of the state, and lacked standing to maintain the action. The *Ritchhart* court also stated that it would not adopt the " 'essential services' " exception to the standing requirements. 256 Neb. at 809, 594 N.W.2d at 294.

In doing so, the Nebraska Supreme Court stated:

> In the case at bar, neither Ritchhart's pleadings nor her brief identify any special injury independent and aside from that shared by the general public. Ritchhart did not plead an illegal expenditure of public funds or an increase in the burden of taxation, and concedes on appeal that "[t]his case is not a taxpayer's action, and has never been alleged or argued as such." Brief for appellee at 5. Thus, according to the well-established principles of standing set forth by this court, Ritchhart would not have standing to maintain this action.

*Ritchhart*, 256 Neb. at 806, 594 N.W.2d at 292.

The plaintiffs in the instant case contend that they have standing because they reside within NRD and have rights to the water underneath their land. Specifically, in their amended petition, the plaintiffs alleged that the applicants have drawn water from the same aquifer as the aquifer that underlies their land and that therefore, the plaintiffs are injured in that the water table of the aquifer will decline further by virtue of the withdrawal of the water by the applicants. The plaintiffs further argue that NRD granted the applicants preferential treatment in reaching settlement agreements with them after initially denying their request for variances. The plaintiffs also alleged that each of them had applied for variances of their own which NRD denied. The plaintiffs alleged that as a result, they cannot develop their agricultural land through the use of irrigation or use additional quantities of water should they desire to increase the number of acres of land they irrigate.

Initially, we dismiss the plaintiffs' argument that NRD's denial of their own individual requests for variances was error,

given that the plaintiffs had the opportunity to appeal and did not do so. Even so, we conclude that the plaintiffs, as alleged, have a legal interest in NRD's grant of additional water to the applicants, given the limited water supply in the district and the fact that NRD granted the applicants' request for variances outside the routine procedures.

In support of their position that they have standing in the instant action, the plaintiffs cite *Ponderosa Ridge LLC v. Banner County*, 250 Neb. 944, 554 N.W.2d 151 (1996), and *Ainsworth Irr. Dist. v. Bejot*, 170 Neb. 257, 102 N.W.2d 416 (1960). In *Ponderosa Ridge LLC*, Ponderosa Ridge, a Nebraska limited liability company, applied for a permit to transfer ground water from a well located in Banner County, Nebraska, to Laramie County, Wyoming. The appellees, Banner County, Eldon Lundberg, Wayne Palm, Dale Ward, and North Platte Natural Resources District, filed objections, and the director of the Department of Water Resources denied the application.

As an initial matter on appeal, the Nebraska Supreme Court considered whether all of the objectors had the requisite standing to challenge Ponderosa Ridge's application before the director. The Supreme Court concluded:

> The record establishes that the individual objectors Lundberg and Ward had water use interests to protect; however, we are not directed to, nor do we find, any evidence that the individual objector Palm had any such interests. Neither have we been directed to, nor do we find, any evidence that the objectors Banner County and North Platte Natural Resources District had any such interests. Indeed, Banner County advised the director that it was appearing on behalf of its residents, and North Platte Natural Resources District stated that it was not "trying to be adversarial, necessarily, to any particular party," but, rather, that it was appearing to protect the public interest.

*Ponderosa Ridge LLC*, 250 Neb. at 948, 554 N.W.2d at 156.

Accordingly, the Nebraska Supreme Court concluded that only Lundberg and Ward had the requisite standing to challenge Ponderosa Ridge's application before the director because they had water use interests to protect.

Similarly, in *Ainsworth Irr. Dist., supra,* the Nebraska Supreme Court held that owners of land within an irrigation district would be legally affected by an appropriation of water and had a legal interest entitling them to appear and object to an irrigation district's application for authority to appropriate water from a river for irrigation purposes.

Likewise, in the instant case, the plaintiffs argue that because they also have water use interests to protect, the trial court erred in finding that they lacked standing to bring this action. We agree. First, we recognize that this is not a case in which the applicants filed applications for variances and the plaintiffs intervened as objectors. Rather, the plaintiffs in the instant case object to the fact that although NRD initially denied the applications for variances, NRD entered into subsequent settlement agreements with these same applicants, in effect granting them the use of additional water initially requested in their applications. In their petition, the plaintiffs alleged that in effect, NRD granted the applicants a variance outside the proper procedures.

Clearly, although not exactly the same facts as *Ponderosa Ridge LLC, supra,* and *Ainsworth Irr. Dist., supra,* the plaintiffs in the instant case, as residents and water users in the district at issue, have an interest in protecting the limited water supply under their lands. Furthermore, the plaintiffs have a corresponding legal interest in NRD's allotment of this water in accordance with the required rules. Although we make no comment on whether NRD violated its own rules in entering into settlement agreements with the applicants, we independently conclude, after accepting the truth of the facts which are well pled, together with the proper and reasonable inferences of law and fact which may be drawn therefrom, that the facts as alleged in the plaintiffs' amended petition show that the plaintiffs have standing to bring the instant suit.

## CONCLUSION

Therefore, we conclude that the trial court erred in sustaining the applicants' demurrers to the plaintiffs' amended petition and in dismissing the plaintiffs' amended petition as a result. We reverse the trial court's order and remand this cause to the dis-

trict court with direction to reinstate the plaintiffs' second amended petition.

REVERSED AND REMANDED WITH DIRECTION.