VELMA BOYD, APPELLANT, V. DR. ANUP K. CHAKRABORTY AND DR. GILES S. HEDDERICH, APPELLEES.

550 N.W.2d 44

Filed July 12, 1996.   No. S-94-863.

Michael A. England, of Wolfe, Anderson, Hurd, Luers & Ahl, for appellant.

Jeanelle R. Robson and James A. Snowden, of Knudsen, Berkheimer, Richardson & Endacott, for appellees.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

WHITE, C.J.
The plaintiff-appellant, Velma Boyd, brought this medical malpractice action against the defendants-appellees, Drs. Anup K. Chakraborty and Giles S. Hedderich, alleging negligence

in their treatment of Boyd, including their alleged failure to inspect a catheter upon its removal from Boyd's chest and failure to remove a fragment of this catheter from Boyd's body after surgery. Because no expert testimony was presented by Boyd as to the standard of care in this case, the district court granted the appellees' motion for summary judgment. Boyd appeals.

Boyd assigns two errors: (1) The district court erred in holding that the proof of negligence in extracting a catheter from a patient requires expert testimony on grounds that it calls upon the specialized knowledge of the medical profession and is beyond the comprehension of lay jurors, and (2) the district court erred in holding that expert testimony was required due to possibilities that the catheter may have broken for reasons other than the doctors' negligence. We reverse, and remand for further proceedings.

As an appeal from a summary judgment, the factual record for purposes of this appeal is reflected in the appellees' affidavits in support of their motion for summary judgment and in Boyd's deposition submitted in opposition to the appellees' motion.

On May 18, 1992, Boyd suffered an episode of pneumothorax, in which her right lung collapsed. She was admitted to Bryan Memorial Hospital, where she came under the care of Chakraborty. Chakraborty attempted to inflate Boyd's lung by inserting an arrow pneumothorax catheter into the right side of her chest.

Boyd also came under the care of Hedderich. On May 21, Hedderich performed a surgical procedure on Boyd's right lung. At the time of this surgery, the pneumothorax catheter was removed. Also at the time of surgery, another larger catheter was placed in Boyd's side for purposes of draining fluid from the lung.

On August 13, Boyd was admitted to Lincoln General Hospital after complaining of stabbing pains in the right side of her chest. She had an x ray taken by one Dr. Raines. Raines told Boyd that she had a fragment of chest tube in her lung. Boyd therefore had another surgery on August 14 to have this fragment removed.

On April 21, 1993, Boyd filed a petition against the appellees in Lancaster County District Court asserting professional negligence. Boyd alleges that a 1-inch fragment of a catheter was left in her chest. Boyd alleges in her petition that the appellees were negligent in (1) failing to properly inspect the catheter upon removal, (2) failing to properly inspect the chest-tube insertion wound after removal, (3) failing to account for all hardware used in the catheterization, and (4) leaving a foreign body inside Boyd following treatment.

The appellees filed their answer on May 24. The appellees admitted that "the plaintiff came under the care of Dr. Hedderich who performed a surgical procedure on the plaintiff's right lung and that a second surgical procedure was performed on August 14, 1992 in which a small fragment of tubing was removed."

On April 22, 1994, the appellees moved for summary judgment. The appellees' affidavits in support of the motion both stated that the appellees complied with the generally recognized standard of care. In addition, Chakraborty's affidavit also stated that the fragment subsequently removed from Boyd's lung was not a fragment from any tubing that Chakraborty used when caring for Boyd.

Boyd testified in her deposition that she was not certain as to which tube it was that fractured inside her chest. She stated that she believed Chakraborty used two different tubes when attempting to inflate the lung. Specifically, she stated, "I know he put a tube in there, and then I think they tried to put a different one in there and it still didn't work . . . ." The following exchange also took place during Boyd's deposition:

Q. . . . I'm trying to find out if you know whether the tube that this fragment came from was the one that Dr. Chakraborty used to inflate your lung or the one that Dr. Hedderich used for drainage from your operative site?

A: I couldn't tell you which one it was.

Boyd did state, however, that she believed the tube fragment was probably from a larger tube than those used by Chakraborty.

At the hearing on the motion for summary judgment, the appellees' counsel argued that if there was an issue of negli-

gence, it was not attributable to Chakraborty. He noted that Chakraborty stated in his affidavit that the tube fragment was not from any tube that he used on Boyd. Second, appellees' counsel argued that expert testimony was required to rebut the appellees' statements that they complied with the standard of care. Boyd's counsel argued that a prima facie case of negligence is presented when a surgeon leaves instruments inside a patient's body.

On August 26, 1994, the district court issued an order sustaining the appellees' motion for summary judgment. The court concluded that expert testimony was "required to show that the defendant fell below the standard of care required by failing to inspect the pneumothorax catheter and chest tube insertion following removal of the instrument from the patient."

The district court found that this case did not fall within the class of cases regarding a doctor leaving a foreign object inside a patient's body. The court distinguished this case based on the fact that the catheter was actually removed, while only a portion was left in the body. Based on prior case law, the court concluded that expert testimony was required, because the breaking of the catheter could have resulted from a cause other than the appellees' negligence. The district court concluded:

> As stated by the plaintiff, it seems obvious that foreign objects placed into the body during surgery need to be removed; however, the fact that a portion of a foreign object remained does not establish that it was the negligent acts of the defendant which caused such to occur. It does not seem obvious that laymen would know the proper technique to be used by physicians when performing this procedure nor does it appear that a layperson would be familiar with the type of instrument in question or its likelihood to break.

Summary judgment is to be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Bogardi v. Bogardi*, 249 Neb. 154, 542 N.W.2d 417 (1996). Concerning this court's standard of review, summary judgment is proper only when the plead-

ings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Lockard v. Nebraska Pub. Power Dist.*, 249 Neb. 971, 546 N.W.2d 824 (1996).

On a motion for summary judgment, the question is not how a factual issue is to be decided, but whether any real issue of material fact exists. *Kocsis v. Harrison*, 249 Neb. 274, 543 N.W.2d 164 (1996). In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Lockard v. Nebraska Pub. Power Dist., supra.*

The party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that the moving party is entitled to judgment as a matter of law. *Kocsis v. Harrison, supra.* After the moving party has shown facts entitling it to a judgment as a matter of law, the opposing party has the burden to present evidence showing an issue of material fact which prevents judgment as a matter of law for the moving party. *Zion Wheel Baptist Church v. Herzog*, 249 Neb. 352, 543 N.W.2d 445 (1996).

We must therefore determine whether, when viewing the evidence in a light most favorable to Boyd, there is a genuine issue of material fact as to whether the appellees met the requisite standard of care in their treatment of Boyd.

This court has held that an affidavit of a defendant physician in a malpractice case, which affidavit states that the defendant did not breach the appropriate standard of care, presents a prima facie case of lack of negligence for the purposes of summary judgment. *Wagner v. Pope*, 247 Neb. 951, 531 N.W.2d 234 (1995).

As noted above, both doctors stated in their affidavits that they complied with the standard of care. These statements are sufficient to present a prima facie case for summary judgment purposes. Therefore, the appellees' affidavits shifted the bur-

den to Boyd to produce evidence of a factual issue regarding whether the appellees met this standard of care.

Regarding the plaintiff's burden of proving that a defendant physician fell below the requisite standard of care, this court has consistently held that "[w]hether a specific manner of treatment or exercise of skill by a physician, surgeon, or other professional demonstrates a lack of skill or knowledge or failure to exercise reasonable care is a matter that, usually, must be proved by expert testimony." *Medley v. Davis*, 247 Neb. 611, 618, 529 N.W.2d 58, 63 (1995).

However, this court has also recognized an exception to this general rule often referred to as the "common knowledge exception": "One of the exceptions to the requirement of expert testimony is the situation where the evidence and the circumstances are such that the recognition of the alleged negligence may be presumed to be within the comprehension of laymen." *Halligan v. Cotton*, 193 Neb. 331, 335-36, 227 N.W.2d 10, 13 (1975). This court has also acknowledged the potential applicability of this exception to cases involving a physician's failure to remove a foreign object from a patient's body. See *Swierczek v. Lynch*, 237 Neb. 469, 466 N.W.2d 512 (1991).

Boyd did not present any expert testimony in opposition to the appellees' statements that they met the standard of care. Rather, Boyd contends that no expert testimony is necessary to prove the appellees' failure to meet the standard of care in this case because the appellees' negligence falls within the common knowledge exception.

The appellees argue that expert testimony was required to establish the standard of care concerning the procedures of inserting and extracting the catheter. Specifically, they contend, "In cases involving a small fragment of material, the issues center on defective equipment, the proper use of force and appropriate technique and are therefore not within the knowledge of lay persons." Brief for appellees at 17. The district court, finding that the fracturing of the tube could have resulted from a cause other than the appellees' negligence, agreed with the appellees. We agree that expert testimony is required in establishing the standard of care for the procedure

of inserting and extracting the catheter when the allegations pertain to the negligence of the physician in fracturing the catheter.

However, whether the appellees acted negligently in leaving a fragment of the tube inside of Boyd represents a separate issue. See *Nixdorf v. Hicken*, 612 P.2d 348 (Utah 1980). Boyd is not alleging that the fracturing of the tube is a result of the appellees' negligence. Rather, Boyd contends, "the issue in this case is whether a jury of lay persons could know and understand the relatively elementary duty of Appellees *to extract the entire catheter*." (Emphasis supplied.) Brief for appellant at 6.

In essence, Boyd contends that no expert testimony is required concerning whether the appellees fell below the appropriate standard of care by allegedly failing to inspect the tube upon removal and leaving a tube fragment in Boyd's lung, because this is within the common knowledge of laypersons. As stated previously, Boyd's allegations of negligence in her petition pertain only to the appellees' conduct after the removal of the tube, such as failing to inspect and leaving a tube fragment inside her body.

The district court and the appellees rely heavily on this court's decision in *Tady v. Warta*, 111 Neb. 521, 196 N.W. 901 (1924). In *Tady*, the defendant physician, in attempting to treat the plaintiff for sinus trouble, drove a sharp steel chisel by use of a small steel mallet through the antrum bone of the plaintiff. The point of the chisel broke off and became imbedded in the bone. The plaintiff alleged that the physician was negligent in using the chisel and in breaking the chisel. The plaintiff did not allege that the defendant was negligent in leaving the broken point of the chisel embedded in the bone. The court in *Tady* concluded that expert testimony was required.

The instant case differs from *Tady* in that it involves whether a physician should remove any foreign objects left inside a patient. It also involves the inspection of a catheter after it is removed from a person's body. This case does not involve the issue of whether a physician was negligent in fracturing a catheter.

In sum, this case involves the leaving of a foreign object, namely, a tube fragment, in a patient's body, which fragment should have been removed by an act understandable by the jury without technical evidence. The only skill required in regard to the alleged negligent conduct of the appellees in this case is to inspect the equipment used in the surgical procedure to make certain everything is intact and has not been left in the patient's body. This is within the realm of knowledge of laypersons. Therefore, we find that the common knowledge exception applies in this case.

When viewing the evidence in the light most favorable to Boyd and drawing all reasonable inferences in her favor, we conclude that the district court erred in granting the motion for summary judgment. The evidence indicates that a fragment of a tube was left in Boyd's chest after Chakraborty and Hedderich treated her. This is not in dispute. Therefore, there is a genuine issue of material fact regarding whether the appellees fell below the requisite standard of care by failing to remove this fragment after operating on Boyd. This inference of breach of duty confronts the appellees' medical opinions of no breach of duty. Justice thus requires a trial.

The appellees contend that, at the very least, Chakraborty should be entitled to summary judgment because his affidavit stated that the tube fragment was not from a tube that he used. We find, however, that an inference can be drawn from the evidence finding that Chakraborty used two different tubes in trying to inflate Boyd's lung, therefore possibly removing a tube at some point during his treatment of Boyd. Chakraborty never stated that he did not remove a tube from Boyd's body. Boyd testified in her deposition that she was not absolutely certain as to which tube fractured inside her chest, nor was she certain as to who removed this tube. We find that the foregoing is sufficient to create a genuine issue of material fact concerning whether Chakraborty's actions constitute negligence.

In conclusion, the district court erred in granting the appellees' motion for summary judgment. Therefore, we reverse, and remand for further proceedings.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.